## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SCHONDA JOHNSON,                          :

      Plaintiff,                          :
                                  Case No. 3:14cv00119

vs.                                       :

                                  District Judge Walter Herbert Rice
CAROLYN W. COLVIN,                        :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                  :

      Defendant.                          :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.   Introduction

Plaintiff Schonda Johnson brings this case challenging the Social Security Administration's denial of her application for Disability Insurance Benefits. The denial came mainly in the decision of Administrative Law Judge Amelia G. Lombardo, who concluded that Plaintiff was not under a "disability," as defined by the Social Security Act. Plaintiff asserts in this case, as she did before the administration, that she has been under a benefits-qualifying disability – starting on July 17, 2007 – due to depression and anxiety.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #13), the

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

administrative record (Doc. #7), and the record as a whole.

Plaintiff mainly asserts, "The Administrative Law Judge erred in finding that Plaintiff was not disabled by her mental impairments." (*PageID#* 107).  The Commissioner contends that substantial evidence supports the ALJ's decision and it must therefore be affirmed.

## II.  <u>Background</u>

### A.  <u>Plaintiff's Testimony</u>

Plaintiff was 28 years old on her alleged disability onset date, placing her in the category of a "younger person" for purposes of resolving her application for benefits.  *See* 20 C.F.R. § 404.1563(c).  She has a high-school education.  Her past relevant employment includes work as a hand launderer and trimmer/hand packager.

At her administrative hearing in September 2012, Plaintiff testified that she worked in a factory in 1998 making parts for foreign cars.  (*PageID##* 95-96).  Later, from 2003 through 2006, she worked for another business doing laundry.  (*PageID#* 96).

 Plaintiff indicated that most of her impairments related to her mental health, aside from some numbness in her leg and foot, (*PageID#* 96).  She explained, "I cannot seem to mentally concentrate on anything that I do ... for longer than five or six minutes.  I've been diagnosed as bipolar.  I have manic episodes." (*PageID#* 98).  Her manic episodes occur "four or five times a month, if not more." (*Id.*).  During her episodes, she bites herself, pulls her hair out, and throws things.  (*PageID##* 99-100, 110).  During her depressed episodes,

she feels sad, "just want[s] to cry," and will lock herself in her bathroom.  (*PageID*# 110).

This occurs "[m]aybe a couple of times a week."  *Id*.  She takes Zyprexa and Xanax, but

these help only "[a]t times" and "don't take [her symptoms] all away."  (*PageID*# 99).

Plaintiff lives in a house with her husband and minor daughter.  (*PageID*## 94-95).

She has a driver's license but drives only "on occasion," once or twice a week if that.

(*PageID*# *s* 95, 107).  She is too nervous to drive at times.  (*PageID*# 107).  Her mother

drove her to the administrative hearing.

Plaintiff usually wakes up around 6:00 or 7:00 a.m., drinks coffee, and smokes

cigarettes.  She wakes up her daughter (a toddler) around 9:00 a.m., feeds her breakfast,

then watches cartoons with her.  Her husband comes home from his job around 9:00 a.m.

and takes their daughter to preschool.  Plaintiff may take a shower or fold a load of laundry,

but she lacks the desire to do anything else.  She testified, "I need to quit sitting around and

figure out what I'm going to do around the house and be able to do something for somebody

else, and for myself, because I sit around and do nothing."  (*PageID*# 105).  She does dishes

only after they pile up, and her husband usually helps.  (*Id.*).  She can vacuum, but she needs

to "talk [herself] into doing these things."  (*Id.*).  Her therapist recommended that she be

more active, but she does not like to be around people.  She has tried to improve her mental

situation by going out to eat with a friend.  But, she finds it difficult to sit in a restaurant

with others.  She feels anxiety "all the time," and it increases when she has to go anywhere.

(*PageID*# 111).

3

Plaintiff took special education classes in middle school and regular education classes in elementary and high school.  (*PageID* # 107).  In her special education classes, she took the same subject as general education students; she "just went slower."  (*Id.*).

Plaintiff does not have any problems with illegal drugs or alcohol.  She takes her medications as prescribed.  She attributes her 75 pounds of weight loss to her mental disability because she does "not have any desire to eat."  (*PageID* # 109).

###    B.    Medical Evidence

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both Plaintiff's counsel, the Commissioner's counsel, and the Administrative Law Judge (ALJ) identified the relevant records concerning Plaintiff's impairments with citations to specific evidence.

### III.    "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful

activity," in Social Security lexicon.[2]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Lombardo applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that only Plaintiff's anxiety and depression constituted severe impairments.  (*PageID#s* 75-77).  At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 12.04 and 12.06.  (*PageID#s* 77-80).

At Step 4, the ALJ assessed Plaintiff's residual functional capacity or the most she could still do despite her work limitations.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th 2006) (en banc).  The ALJ concluded that Plaintiff retained the ability to perform the full range of exertional work with some nonexertional limitations.  According to the ALJ, Plaintiff was "limited to unskilled work as defined by the Dictionary of Occupational Titles, work which is low stress in nature, which is defined as work that does not involve assembly-line production quotas or fast pace and that does not involve more

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

than occasional contact with co-workers, supervisors, or the general public." (*PageID#* 80).

The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*PageID#* 81).

The sum and substance of the ALJ's sequential evaluation ultimately led to the her ultimate conclusion that Plaintiff was not under a benefits-qualifying disability.

**IV.** **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

6

387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ."  *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing the ALJ's legal criteria for correctness – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.   Discussion

Plaintiff contends that the ALJ erred by rejecting the opinions of Dr. Griffiths and Dr. Halmi – both of whom examined Plaintiff at the request of the State of Ohio.[3]  Plaintiff further contends that the ALJ erred by rejecting Ms. Carr's opinions.  Ms. Carr – a License Social Worker – was Plaintiff's treating therapist, starting in May 2011.  Plaintiff also maintains that the opinions of Dr. Vosler, her treating physician, were due deferential weight.

_____

[3] Specifically, the State of Ohio's Opportunities for Ohioans with Disability, Division of Disability Determination.

The Commissioner contends that the ALJ properly considered all the evidence of record, including the opinion evidence. The Commissioner argues that the ALJ's assessment of Plaintiff's mental work abilities and limits is mostly consistent with the reports by state-agency record-reviewers Dr. Warren and Dr. Katz. *Id*., *PageID*#s 122-124; 136-37.

Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[4] To effect this hierarchy, the Regulations adopt the treating physician rule. *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242; *cf. Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("in fact the technical name for the 'treating physician' rule is the

---

[4] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards. *See Gentry*, 741 F.3d at 723. The re-lettered version applies to decisions, like ALJ Lombardo's decision, issued on or after April 1, 2012.

'treating source' rule").  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d  at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at

723.  If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

As to non-treating medical sources, the regulations require ALJs to weigh their

opinions "based on the examining relationship, (or lack thereof), specialization, consistency,

and supportability, but only if a treating-source opinion is not deemed controlling."

*Gayheart*, 710 F.3d  at 376 (citing 20 C.F.R. §404.1527(c)).

Psychologist Dr. Griffiths examined Plaintiff in September 2010.  He diagnosed her

with major depressive disorder, recurrent and moderate without psychotic features; and

anxiety disorder.  (Doc. #7, *PageID*# 297).  Her ability to relate to others was moderately

impaired, and she "would very likely have difficulty relating adequately to others in

completing simple repetitive tasks."  *Id*.  Her ability to understand, remember, and carry out

simple instructions was mildly impaired.

Dr. Griffiths noted that Plaintiff's "short-term memory skills were only marginally

adequate during this evaluation and may deteriorate over extended time periods slowing her performance in completing simple repetitive tasks." *Id*. Her attention, concentration, persistence, and pace were adequate during the evaluation, but Dr. Griffith noted that these abilities "may deteriorate over extended time periods, slowing her performance in completing simple tasks." *Id*. Her ability to deal with work stress was markedly impaired. Stress could increase her anxiety and decrease her attention and concentration and might result in "withdrawal, crying, and slowed work performance." *Id*.

In March 2011, psychologist Dr. Halmi examined Plaintiff and reviewed Dr. Griffiths' report. He diagnosed Plaintiff with severe major depressive disorder, recurrent, without psychotic features; dysthymic disorder; and anxiety disorder. *Id., PageID*# 315. Dr. Halmi noted that although Plaintiff worked until 2007, "she appears to have decompensated over the last four years, if her self report is accurate. She is distracted by worry. She lacks initiative because of her depression. She completed all provided paperwork with coherent, relevant responses." *Id*., *PageID*# 317. Her performance on tests administered by Dr. Halmi suggested "some problems with concentration." *Id*. Dr. Halmi believed that Plaintiff "would have intermittent problems getting along with coworkers and supervisors because of her irritability and hypersensitivity. She would have difficulty working with the general public because of her depressed demeanor and hypersensitivity. *Id*. Dr. Halmi also opined that at the time of his evaluation:

> [Plaintiff] could not manage difficult people because of her hypersensitivity.
> She also would not accept criticism with grace, but would likely

10

decompensate emotionally (i.e., cry).... [S]he could not meet deadlines due to her lack of initiative and energy as well as being severely depressed.... [S]he does not have the emotional stability or perseverance to manage unforeseen, novel problems (i.e., would likely cry and abandon the task.).

*Id*., PageID# 319.

ALJ Lombardo rejected the opinions of Drs. Griffiths and Halmi for numerous reasons.  Before addressing those reasons, it should be observed that rather than favoring these psychologists' opinions, ALJ Lombardo gave significant weight to the opinions of Drs. Warren and Katz.  In doing so, the ALJ found that the opinions of Drs. Warren and Katz "are generally consistent with the weight of the evidence as set forth above and their conclusions give some benefit of doubt to the claimant's allegations, despite the questionable veracity of her statements."  (Doc. #7, *PageID*# 83).  The problem here is that it was incumbent upon the ALJ to more thoroughly evaluate the opinions provided by Drs. Warren and Katz, rather than referring to the "consistency" factor in a conclusory manner.  The ALJ's reference is conclusory because it leaves essential questions unanswered: What evidence was consistent with these record-reviewers' opinions?  Certainly not the opinions of Drs. Griffith and Halmi.  What other factors did the ALJ apply and why?  Such information was needed in this case given the central role played by the ALJ's acceptance of the opinions by Drs. Warren and Katz over the opinions by psychologists Drs. Griffiths and Halmi.  Such information was also needed because at least one applicable consideration favored the opinions of Drs. Griffiths and Halmi – they examined Plaintiff, while Drs. Warren and Katz did not.  This is a significant consideration under the regulations, which

state, "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(1) (eff. April 1, 2012).  The Commissioner's Ruling points in the same analytical direction:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence..., the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist....

Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2 (July 2, 1996).  Moreover, "the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.  For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id*.  The ALJ's decision does not explore these matters and therefore fails to apply the correct legal criteria to the opinions provided by Drs. Warren and Katz.  *See Gayheart*, 710 F.3d  at 376 (identifying factors applicable to non-treater's opinions).

  Returning to Drs. Griffiths and Halmi, the ALJ rejected their opinions because they relied on Plaintiff's subjective allegations, which the ALJ found to lack credibility. Substantial evidence does not support this reason.

12

Given the nature of mental-health impairments, the regulations acknowledge the

significant role symptoms play in diagnosing and evaluating such impairments.  The

Listings state:

> Psychiatric signs are medically demonstrable phenomena that indicate
> specific psychological abnormalities, e.g., abnormalities of behavior, mood,
> thought, memory, orientation, development, or perception, as described by an
> appropriate medical source.  Symptoms and signs generally cluster together to
> constitute recognizable mental disorders described in the listings. The
> symptoms and signs may be intermittent or continuous depending on the
> nature of the disorder.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12:00B.

In addition:

> "[A] psychiatric impairment is not readily amenable to substantiation
> by objective laboratory testing as a medical impairment….  Consequently, the
> diagnostic techniques employed in the field of psychiatry may be somewhat
> less tangible than those in the field of medicine…. In general, mental
> disorders cannot be ascertained and verified as are most physical illnesses….
> [W]hen mental illness is the basis of a disability claim, clinical and laboratory
> data may consist of the diagnosis and *observations* of professionals trained in
> the field of psychopathology.  The report of a psychiatrist should not be
> rejected simply because of the relative imprecision of the psychiatric
> methodology or the absence of substantial documentation, unless there are
> other reasons to question the diagnostic techniques."

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (emphasis added) (citations

omitted).

Contrary to the ALJ's finding, the opinions of Drs. Griffiths and Halmi were based

on more than Plaintiff's subjective reports and were instead based on the clinical

observations used by psychologists and other health-care providers when assessing a patient

13

for depression and anxiety.  Dr. Griffiths observed that Plaintiff was depressed, had

downcast facial expression, and was tearful throughout the evaluation.  (Doc. #7, *PageID*#s

294-95).  He also noted that she "appeared to be an emotionally uncomfortable and

generally compliant person."  *Id*. at 296.  Dr. Halmi observed that Plaintiff's posture was

tense. She sat on the edge of her seat.  Her facial expressions were generally strained.  She

was restless and bounced a pencil on her knee.  Her hands shook.  *Id*. at 312.  She cried

during the evaluation.  *Id*. at 317.  Her affect was described as depressed.  She talked and

moved slowly.  She also exhibited signs of anxiety such as restlessness and being fidgety.

*Id*. at 314.  These clinical findings show that both Drs. Griffiths and Halmi did not merely

rely on Plaintiff's subjective reports.  Treatment notes, moreover, show that at almost every

treatment session, Plaintiff was *observed* to be severely to be tearful, depressed, and anxious

with a flat affect.  *Id*. at 473, 480, 351, 354, 357, 368, 371, 374, 385, 389, 392, 395, 398,

401, 404, 409, 415, 433.  In light of such information, substantial evidence does not support

the ALJ's conclusion that Drs. Griffiths and Halmi merely relied on Plaintiff's subjective

reports.

Another problem with the ALJ's decision was her identification of Plaintiff's lack of

motivation as a reason for discounting Plaintiff's credibility and for rejecting the opinions

of Drs. Griffiths and Halmi.  (Doc. #7, *PageID* #s 81, 83-84).  Although the ALJ noted, "the

record demonstrates that the claimant's alleged lack of motivation was within her control ...,

*id*. at 81, the ALJ failed to support this with reference to any record evidence.  This

14

omission is significant because there is no indication that the ALJ considered the very real possibility, if not likelihood, that depression – not malingering – caused Plaintiff's lack of motivation.  If social security claimants who suffer from depression can be denied benefits because they lack motivation, then the pool of rejected applicants would include many individuals disabled by depression.  To drain this pool consistent with the Social Security Act, a disjunctive issue arises:  Did depression or malingering cause the applicant's lack motivation?  In the present case, the ALJ assumed the latter by not referring to the evidence of record upon which she relied to find that Plaintiff's lack of motivation was within her control.  This was error due to the signs and symptoms Drs. Griffiths and Halmi observed, as well as Dr. Griffiths' conclusion that Plaintiff did not exaggerate her "signs of psychopathology," *Id*. at 312.  Indeed, the record evidence creates the very real possibility that Plaintiff was not malingering and that depression caused her lack of motivation, a possibility the ALJ should have discussed in light of the evidence of record, rather than jumping to the conclusion that lack of motivation is the equivalent of malingering.

Turning to the non-examining record reviewers, they did not test, examine, or observe Plaintiff, and they reviewed an incomplete record.  Dr. Warren reviewed only three medical records and Plaintiff's school records; Dr. Katz reviewed only three additional medical exhibits and the three previous ones as well as Plaintiff's school records.  (Doc. #7, *PageID*#s 142, 147).  Their opinions, therefore, were significantly less informed than the opinions of Drs. Griffiths and Halmi, and, at least potentially, not deserving of significant

15

weight. *Cf.* Soc. Sec. Ruling 96-6P at *2, 1996 WL 374180 at *2 ("the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.").

Accordingly, Plaintiff's Statement of Errors is well taken.

## VI.    Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of

disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) re-evaluate Plaintiff's credibility and residual functional capacity under the legal criteria set forth in the Commissioner's Regulations and Rulings, and as mandated by case law; and (2) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether she was under a disability and thus eligible for Disability Insurance Benefits.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability decision dated December 13, 2012 be vacated;

2.  No finding be made about whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3.  This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.    The case be terminated on the Court's docket.


June 2, 2015

                                    s/Sharon L. Ovington
                                 Sharon L. Ovington
                          Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).